OPINION HEADING PER CUR 









                NO. 12-06-00213-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

            

JAMES
T. MARTINEZ,       §          APPEAL FROM THE 159TH

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

TEMPLE-INLAND
FOREST

PRODUCTS
CORPORATION,       §          ANGELINA COUNTY, TEXAS

APPELLEE




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION

            James T. Martinez appeals the trial court’s order
granting summary judgment in favor of Appellee Temple-Inland Forest Products
Corporation (“Temple-Inland”).  In one
issue, Martinez contends that the trial court erred in granting the summary
judgment because there were disputed fact issues regarding his claims of same
sex harassment and retaliation.  We
affirm.

 

Background

            James Martinez had a troubled relationship with David
Thomas, his immediate supervisor at Temple-Inland.  In September 2002, during a meeting with
Thomas and Human Resources Manager T.J. Colwell, Martinez shouted a profanity
at Thomas when confronted with his poor work attendance record.  Under Temple-Inland’s Progressive Corrective
Action Policy, which had gone into effect two months earlier, Martinez could
have been immediately terminated. 
However, he was given a written warning signed by Thomas and Colwell
informing him that any further such behavior could result in his immediate
termination.  

            On February 24, 2004 Thomas and Martinez’s coworker,
Monte Whisenhunt, began arguing over a corrective feature used by their plant’s
press operators.  Martinez interjected
himself into the argument, calling Thomas an “asshole.”  Thomas responded, and Martinez exclaimed “f***
you” to Thomas and left the room. 
Martinez admitted making these statements.  








            On Thursday, February 25, Martinez was sent home with pay
pending an investigation of his behavior. 
Temple-Inland formed a three person team (the “Team”) to investigate the
incident, consisting of Colwell, Jeff Mastro, and Temple-Inland’s human
relations director, Jim Cumbie.  

            On Friday, February 26, following their investigation,
the Team decided to terminate Martinez for his violation of company
policy.  The Team further decided that
they would not notify Martinez until Monday, March 1, so that Temple-Inland’s
senior management could approve their decision.

            That afternoon, Martinez contacted Mastro alleging that
Thomas had been sexually harassing him. 
Mastro, Cumbie, and Colwell decided to delay their meeting to notify
Martinez of his termination until Colwell was able to investigate Martinez’s
new claim of same sex harassment. 
Colwell investigated the claim on Monday, March 1, and determined that
Thomas, Martinez, Whisenhunt, and five other men who worked in the lab had been
involved in rowdy behavior and horseplay, which included the subject of
homosexuality.  Martinez later admitted
his involvement in such behavior.  

            On March 2, Martinez was terminated by Temple-Inland for
violating Temple-Inland’s written policy against cursing another company employee.  Martinez subsequently brought the instant
suit against Temple-Inland alleging same sex discrimination, retaliation, and
intentional infliction of emotional distress. 
After adequate time for discovery, Temple-Inland filed both traditional
and no evidence motions for summary judgment. 
On April 17, 2006, the trial court signed a general order granting
Temple-Inland’s motion for summary judgment. 
Martinez timely filed this appeal.

 

Summary Judgment

            In his sole issue, Martinez contends
that the trial court erred in granting summary judgment in favor of
Temple-Inland because genuine issues of material fact existed with regard to
his allegations that he was sexually harassed by Thomas and that Temple-Inland
retaliated against him for reporting the harassment.[1] 

Standard
of Review

            The movant for traditional summary
judgment must show that there is no genuine issue of material fact and that he
is entitled to judgment as a matter of law. 
See Tex. R. Civ. P. 166a(c).  In reviewing a summary judgment, we consider
the evidence in the light most favorable to the nonmovant and resolve any doubt
in the nonmovant’s favor.  Nixon v.
Mr. Property Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).  A movant must negate at least one central element
of the nonmovant’s cause of action or prove all essential elements of an
affirmative defense.  Redmon v.
Griffith, 202 S.W.3d 225, 232 (Tex. App.–Tyler 2006, pet. denied).  Once the defendant establishes its right to
summary judgment as a matter of law, the burden shifts to the plaintiff to
present evidence raising a genuine issue of material fact, thereby precluding
summary judgment.  City of Houston
v. Clear Creek Basin Authority, 589 S.W.2d 671, 678–79 (Tex.
1979).  Evidence is conclusive only if reasonable
people could not differ in their conclusions. 
City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex.
2005).  

            A party may also move for summary
judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden
of proof at trial.  See Tex. R. Civ. P. 166a(i); Western
Investments, Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).  A no evidence motion is properly granted if
the movant fails to bring forth more than a scintilla of probative evidence to
raise a genuine issue of material fact as to an essential element of the
nonmovant’s claim on which the nonmovant would have the burden of proof at
trial.  Redmon, 202 S.W.3d
at 232 (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997)).  This is evidence
that would enable reasonable and fair minded jurors to differ in their
conclusions.  Wal-Mart Stores v.
Spates, 186 S.W.3d 566, 568 (Tex. 2006).  

Same
Sex Harassment Claim

            The summary judgment evidence
reflects that Martinez contended Thomas first began harassing him sexually by
calling him “coongirl.”  Yet Martinez
conceded that he had introduced himself to Thomas and his fellow coworkers as a
“Puerto Rican coonboy” and that he was not offended by being called “coonboy.”  Martinez 
stated that he took offense when Thomas began calling him “coongirl.”  He further stated that Thomas ceased calling
him “coongirl” after he asked him to stop.

            However, before he stopped calling
Martinez “coongirl,” Thomas told Martinez’s coworkers that they could take
Martinez out to San Francisco and pimp him out in gay bars there.  Martinez stated that Thomas specifically
talked about his “long legs” in that context. 
Martinez alleged that Thomas continually asked him if he would go to San
Francisco with him.  Martinez said Thomas
increased the frequency of his comments in February 2004 when the city of San
Francisco began issuing marriage licenses to homosexual couples. 

            Martinez’s suit against
Temple-Inland for sex discrimination and retaliation was brought under the
Texas Commission on Human Rights Act (“TCHRA”). 
See generally Tex. Lab.
Code Ann. § 21.001
(Vernon 2006).  The relevant parts of the
TCHRA are patterned after Title VII of the Federal Civil Rights Act.  Quantum Chemical Corp. v. Toennies,
47 S.W.3d 473, 474 (Tex. 2001).  We look
to federal precedent for interpretive guidance to meet the legislative mandate
that the TCHRA is intended to “provide for the execution of the policies of
Title VII of the Civil Rights Act of 1964 and its subsequent amendments.”  Id.; Tex. Lab. Code Ann.
§ 21.001(1).  Title VII provides that it
shall be an unlawful employment practice for an employee to fail or refuse to
hire or discharge any individual, or otherwise to discriminate against any
individual with respect to his compensation, terms, conditions or privileges of
employment because of such individual’s race, color, religion, sex, or national
origin.  See 42 U.S.C.A. §
2000e-2(a)(1) (West 1994); Roberson v. Alltel Info. Svcs., 373
F.3d 647, 651 (5th Cir. 2004).

            In 1998, the United States Supreme
Court held that sex discrimination consisting of same sex sexual harassment is
actionable under Title VII.  Oncale
v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 79–80, 118 S. Ct. 998,
1002, 140 L. Ed. 2d 201 (1998).  The
court emphasized that claims of same sex harassment are subject to the
identical requirements as claims of opposite sex harassment, that is, a
plaintiff making a claim of either same sex or opposite sex harassment “must
always prove that the conduct at issue is not merely tinged with offensive
sexual connotations, but actually constituted discrimination. . .because of. .
.sex.”  Id., 523 U.S. at
81, 118 S. Ct. at 1002.  In a case of
alleged same sex harassment, courts must first determine whether the harasser’s
conduct constitutes sex discrimination.  La
Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002).  If the answer is “yes,” the court must decide
whether the challenged conduct meets the applicable standards for either a quid
pro quo or hostile environment claim.  Id.

            There are three methods by which a
plaintiff alleging same sex sexual harassment can show he was harassed based on
his sex:

 

....First, he can show that the alleged
harasser made “explicit or implicit proposals of sexual activity” and provide “credible
evidence that the harasser was homosexual.” 
Second, he can demonstrate that the harasser was “motivated by general
hostility to the presence of [members of the same sex] in the workplace.”  Third, he may “offer direct, comparative
evidence about how the alleged harasser treated members of both sexes in a
mixed-sex workplace.”

 

Id. (citations
omitted) (quoting Oncale, 523 U.S. at 80–81, 118 S. Ct. at
1002).  

            In the case before us, there is no
evidence in the record to demonstrate that Thomas was motivated by a general
hostility to the presence of the other males in the lab where he and Martinez
worked with six other men.  The third
factor is also inapplicable here because the record shows that there were no
female workers in the lab where Martinez and Thomas worked together.  Therefore, we will consider the summary
judgment evidence only as to the first factor outlined in Oncale.  

            Martinez stated in his deposition
that he was not alleging that Thomas had physically touched or abused him.  He further testified in his deposition that
he was not alleging Thomas had requested any sexual favors from or made sexual
demands upon him.  Martinez stated that
he thought Thomas was getting too personal when he talked about Martinez’s long
legs.  Martinez conceded in his
deposition that Thomas’s references to his long legs involved taking Martinez
to San Francisco and pimping him out so that Thomas could be “rich in no time
at all.”  Martinez admitted that he never
believed Thomas would actually physically take him to San Francisco and pimp
him out to homosexuals.  Martinez further
stated that he thought Thomas’s behavior was “ridiculous and humiliating.”

            Moreover, Martinez produced no
evidence that Thomas was, in fact, a homosexual.  There are two types of evidence that are
likely to be specially “credible” proof that a harasser may be a
homosexual.  See Laday, 302
F.3d at 480.  The first is evidence
suggesting that the harasser intended to have some kind of sexual contact with
the plaintiff rather than merely to humiliate him for reasons unrelated to
sexual interests.  Id.  The second is proof that the alleged harasser
made same sex sexual advances to others, especially to other employees.  Id.

            Martinez stated that Thomas’s
conduct toward him was “humiliating.” 
Yet he has presented no evidence that demonstrates Thomas intended to
have sexual contact with him.  All of the
references in the summary judgment record regarding homosexual activity involve
conduct  happening in San Francisco.  Martinez’s testimony regarding what would
happen in San Francisco was that Thomas would be pimping him out to homosexuals
there.  The record shows that Thomas was
married with one young child.  Martinez
was married with four children.  Further,
there is no evidence in the record indicating that Thomas had made same sex
advances to the other six men who worked in the lab or anyone else.  Therefore, we hold there is no evidence in
the summary judgment record to establish same sex harassment. 

Retaliation

            Martinez also alleges that
Temple-Inland retaliated against him for filing the same sex harassment
complaint against Thomas.  Title VII
provides that “it shall be an unlawful employment practice for an employer to discriminate
against any of his employees. . .because he has made a charge, testified,
assisted or participated in any manner of an investigation, proceeding or
hearing under this subchapter.” 42 U.S.C.A. § 2000e-3(a) (West 1994).  To make out a prima facia case of
retaliation, Martinez must provide evidence that (1) he engaged in protected
conduct, (2) he was thereafter subjected to an adverse employment activity
(such as termination), and (3) the adverse employment action was taken in
response to his protected conduct.  See
Hockman v. Westward Commc’ns, LLC, 407 F. 3d 317, 330 (5th Cir.
2004).  

            A prima facie case, once
established, raises a presumption of discrimination, which the defendant must
rebut by articulating a legitimate, nondiscriminatory reason for its
actions.  See Shackelford v.
Deloitte & Touche, LLP, 190 F. 3d 398, 404 (5th Cir. 1999).  If the defendant satisfies this burden, the
plaintiff must prove that the proffered reasons are pretextual.  Id.  Once a Title VII case reaches the pretext stage,
the only question on summary judgment is whether there is a conflict in
substantial evidence to create a jury question regarding discrimination.  Id.

            Martinez does not dispute that
Temple-Inland acted  pursuant to its
policies in terminating him for “cursing out” Thomas.  Rather, he contends that the fact that he was
terminated five days after he made the allegations of Thomas’s same sex
harassment is prima facie evidence Temple-Inland retaliated against him.  We disagree. 
The mere fact that some adverse action is taken after an employee
engages in some protected activity will not always be enough to establish a
prima facie case of retaliation.  Swanson
v. General Svcs Admin., 110 F. 3d 1180, 1188 n.3 (5th Cir. 1997).  It is apparent from the summary judgment
record that Temple-Inland was contemplating terminating Martinez for his
violation of its established written policies before it learned of his same sex
harassment allegations.  Employers need
not suspend contemplated employment actions simply because the employee
affected by such actions alleges a Title VII violation.  See Clark County School Dist. v.
Breeden, 532 U.S. 268, 272, 121 S. Ct. 1508, 1510–11, 149 L. Ed. 2d 509
(2001).  When an employer proceeds along
lines previously contemplated though not definitely determined, the action does
not amount to evidence of causality.  Id.  We conclude that Martinez’s argument
is untenable.  Therefore, we hold that
the summary judgment record contains no evidence to support a prima facie case
of retaliation.  Martinez’s sole issue is
overruled.

 

Disposition

            Having overruled Martinez’s sole issue, we affirm
the trial court’s judgment.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered July 18, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

(PUBLISH)











[1] Martinez does not make
any argument on appeal that the trial court’s grant of summary judgment as to
his claim for intentional infliction of emotional distress was improper.  See Tex. R. App. P. 38.1(h).